*December*, 1824.                          Shields *against* Lyon.

Certificate of the        IN the Circuit Court of *Washington* County *Samuel B.*
Board of Com-
missioners con-    *Shields* brought an action of trespass against *James G. Ly-*
firming a claim to on, on the title to a tract of land claimed by him, and charg-
land under a Spa-
nish warrant of ed to be in possession of defendant. The venue being
survey, is evi-    changed to *Clarke* County, a verdict and judgment were
dence of an es-
tate in which the  rendered for the defendant. By the bill of Exceptions
widow is entitled  taken on the trial, it appears that *Shields* produced a patent
to dower.
                   from the United States *to him, as legal representative of
                   James Caller,* dated 15th of *April,* 1822, for the lands spe-
                   cified in the declaration ; that *Lyon* claimed the premises
                   under a lease from Mrs. *Winney Caller,* widow of *James
                   Caller ;* that *James Caller* had died in 1819, and dower in
                   the land was duly assigned to his widow within the year
                   and day after his death ; that *Lyon,* at the date of the plain-
                   tiff's writ, was in the possession of the lands which were so
                   assigned to the widow as dower ; that on the trial he pro-
                   duced a certificate of confirmation for said lands granted
                   by the commissioners who were appointed by the govern-
                   ment of the United States, and who, as a Board, held their
                   sessions at *St. Stephens ;* the certificate (a copy of which is
                   annexed to the bill of Exceptions) is dated 7th of *August,*
                   1805, and states that *James Caller,* representative of *An-
                   thony Hoggatt,* presented his claim in due form to seven
                   hundred and thirty-two acres of land, &c., by virtue of an
                   order of survey from the Spanish government, bearing date
                   the 9th day of *February,* 1788 ; and by virtue of the 1st
                   section of an Act of the Congress of the United States,
                   passed, &c., entitled " An Act regulating the grants of land
                   " and providing for the sale of the lands of the United
                   " States, south of the State of *Tennessee,*" it is hereby cer-
                   tified and made known, that " the said Board, having inves-
                   " tigated and considered said claim, adjudge that the same
                   " is supported agreeably to the requirements of said Act ;
                   " and that the claimant is entitled to a patent for seven hun-
                   " dred and thirty-two acres of land, to be located as fol-
                   " lows, to wit, &c., provided that said claimant first obtain

" before a Court of competent jurisdiction a judicial deci-
" sion in his favour against the adverse claim, by virtue of a
" grant to *John Lott* from the British government of *West*
" *Florida* of three hundred acres, bearing date," &c.

*Shields* by his Counsel moved the Court to instruct the Jury,

That said certificate did not vest the legal title to the land in *James Caller*, and

That it did not vest such title in him as to entitle his widow to dower against the patent of *Shields*.

The Court refused to give either of the instructions; to which the plaintiff excepted, and assigned this matter here as Error.

*Hitchcock* for plaintiff in Error.

To entitle the widow to dower, her husband must have been seized of an estate of inheritance. The title of *Caller* was not perfected by the certificate. In order to obtain a patent, he was required to obtain a judicial decision in his favour against the claim of *Lott*. The Act of Congress required that the certificate should be duly entered with the Register of the Land Office. His title, then, was but inchoate. The requisites to perfecting it may not have been complied with. In a judicial proceeding adapted to the case, it may have been shewn that another claimant was entitled to the patent and to the land. *Shields* holds the patent; he shewed title in fee simple derived directly from the United States. Whence is the widow's title to dower to be derived, when it does not appear that an estate of inheritance had vested in her husband? Can she sustain her claim in conflict with, or under, the patent to *Shields*, which shews that the fee simple, in passing from the sovereign power vested for the first time in him now asserting a claim adverse to hers? Whatever may be the strength of her claim against those who may claim under *Caller*, by will, descent, or deed, it surely cannot be good against the patent to *Shields*. Bac. Ab. title, Dower. 2 vol. Laws U. S. 546. 7 Whea. 1. 7 Cra. 115. 1 John. 317. 7 Mass. 253. 12 John. 81. 9 Cra. 87.

*Salle* for defendant in Error.

I contend that *Caller* had an estate in fee simple according to the laws of the country under which his claim originated; what these laws were is immaterial to the present question. The certificate recognizes his title as derived

from them. Its words are, " the claimant is entitled to a patent." The United States, then, have recognized his title, and could not vest title in another till his had reverted ; and this must be ascertained by inquest of office. Articles of Cession and Agreement, 1 art. 2 sec. Turner's Digest, 36. If *Caller* had died even before the certificate issued, must not his heirs have inherited ? The Board of Commissioners was constituted to ascertain what lands in the territory had become private property by the Acts of the former government, in order that it might be known what were left to be disposed of by the United States. They were to ascertain titles and claims already in existence, not to originate titles. *Caller's* title must have rested on a foundation prior to the certificate.

The notice from *Shields*, as set out in the Record, shews that at the time of his death, *Caller* was in possession of the land ; but a mere seizin in law, during the coverture, was sufficient to entitle the widow to dower. 2 Bl. Com. 131.

As to *Lott's* claim and the entry of the certificate with the Register of the Land Office, even if *Caller's* estate be considered as defeasible, it was not defeated during his life, and the widow is entitled to dower. Bac. Ab. Dower, 367, 371. Lit. s. 448. 1 Roll's Ab. 677. 6 Com. D. 573. As to the second part of the instructions prayed for, Mr. *Hitchcock* contends that the patent to *Shields* ought necessarily to prevail against our claim. The patent is to him as *the legal representative of Caller* ; as to us then it is inoperative, and he cannot impeach our title. The patent does not shew specifically how *Shields* became entitled ; but neither by will, deed, or descent from *Caller*, could the right to dower be impaired. 1 Caine's, 185. 3 Caine's, 188. 6 John. 290. 1 Mun. 24. Land Laws, U. S. 283, 286. Laws Ala. 338, s. 2.—247, s. 9.—260, s. 3.

*Parsons* on the same side.—The certificate of the Commissioners was surely evidence of some estate in *Caller.* An action at law might be sustained or defended on it, and if his heirs were entitled, though he died before the patent issued, it would seem that he must have held a legal estate of inheritance. By the Act of 1812, all certificates such as this now under consideration, shall be taken as vesting a full and complete legal title so far as to enable the holder to maintain any action thereon. By the Act of 1816, the widow shall be endowed of lands held by certificates of the description there mentioned. If our certificate is not of this description, the equity of the Statute is at least as strong in support of the right of dower under it as under a certi-

ficate for lands purchased of the United States, the pay-
ment for which has not been completed. Mr. *Hitchcock*
contends that as *Caller's* was not a perfect, legal, but mere-
ly an equitable title, the right of dower does not attach.
Grant that he held but the equitable title, and yet the Act
of 1812 (Laws Ala. 247, s. 9,) to my mind makes the case
most clear for us. Wherever the legal title might rest, it
was held in trust for his benefit, and the Statute in so many
words declares that his wife shall hold and may recover her
dower of such lands.

. *Rust* in reply.—As to the second branch of the instruc-
tions prayed for, I consider it clear that our patent could not
be called in question unless by a title of equal dignity. The
counsel for the defendant in Error seem to regard the certi-
ficate as of equal dignity with the patent; and that *Lyon*, the
defendant in the action, could by its operation overreach
our patent. To me this seems to be in conflict with all esta-
blished principle, as to the grade and dignity of evidence.
It is not to be inferred, that by the patent *Shields* held
merely the estate which the certificate shews was in *Caller*
while inchoate. We do not contend that the United States,
by a subsequent grant, could vacate a prior existing grant ;
but what is a grant ? Had the grantor here, by issuing a
patent, vested complete title in the grantee. If *Caller* did
not obtain the decision required, cause the certificate to be
entered with the Register, or perform the other conditions
precedent, whatever they may have been, he was not entitled
to the patent. The case cited from 7 Wh. 1, proves this.
As to the position of Mr. *Parsons*, that the certificate vest-
ed the legal estate in *Caller*, if admitted, it would not sus-
tain the defendant in Error. Our patent is a better title and
of higher grade than the certificate ; and, as is proved by the
case cited from 9 Cra. 87, the patent justifies the pre-
sumption that all the previous requisites of the law have
been complied with. If *Caller* were in possession, claiming
under the certificate, we should, by force of our patent, sure-
ly be entitled to recover of him. The dower is claimed
under his title, and as I have said it is not to be inferred from
the patent that we claim under him, our title is complete,
and derived directly from the United States.

Judge *Crenshaw*.—The principal question here is, whe-
ther the certificate of the Board of Commissioners, confirm-
ing a claim to land under a Spanish warrant of survey, was
evidence of such an estate as entitled the widow to dower ?
The Act of Congress declares, that any person who may

(under the circumstances mentioned therein,) have acquired a Spanish warrant of survey, shall be confirmed in his claim in the same manner as if his title had been completed. That the decision of the Commissioners shall be final, and that they shall give to the successful claimant a certificate of confirmation on which he shall be entitled to receive a patent. I am not informed as to what, according to the laws and customs of the Spanish Government, would constitute a complete title to lands. As far as such knowledge is necessary to aid in arriving at my conclusions in this case, I must depend upon the lights furnished by the Act of Congress. This Act speaks of Spanish grants and Spanish warrants or orders of survey, as things distinct from each other. The Commissioners are required, on confirming either, to give a certificate of confirmation. In case of a grant on registering the certificate, all claim of the United States is relinquished. The Act does not make it necessary to obtain a patent in order to complete the title. But in the case of confirmation of a warrant, it seems from the Act that a patent would be necessary to the consummation of a legal title. If the Spanish authority by grant had conveyed the fee, it would be nugatory for the United States by patent to convey the same fee ; but a warrant of survey being considered as an incomplete title, a patent was necessary as the highest evidence of the title being perfected. But the Act of Congress declares, that the person who claims under such a warrant shall be confirmed in his claim in the same manner as if his title had been completed. Then whether the title under the Spanish Government be perfect or imperfect, the Act of Congress virtually declares it perfect and complete ; and in the case of a warrant of survey, a patent was not essential to complete the legal estate : " it shall be confirmed," I understand to mean that it shall be on the same footing with a perfect title. The Board of Commissioners was not constituted to complete that which was before imperfect, but to ascertain and finally adjust the rights of the claimant ; and by operation of the law the legal estate was complete on their giving a certificate. The certificate of confirmation gave no new quality or property to the estate which *Caller* had in the land, but is merely the evidence of his title or legal estate as confirmed. The Act of Congress does indeed say, that on receiving the certificate of confirmation the party shall be entitled to a patent from the United States ; but it does not declare that he shall obtain a patent in order to complete his legal title. It would be matter of prudence to procure a patent, as the best and safest evidence of title ; yet it is not essential to the completion of the legal estate.

for the title is derived from the Spanish Government and not from the United States.

The patent to *Shields* furnishes intrinsic evidence that the estate was in *Caller.* By the patent the land is granted to *Shields* as the " legal representative of *James Caller,*" recognizing in *Caller* a legal right to the land, and shewing clearly that *Shields* derived title from him, and estopping *Shields* from saying that *Caller* had no legal title.

Again, by our Statute the widow is entitled to dower in an estate held for the use, or in trust for the benefit, of her husband, (*a*) provided she would be entitled if the estate was a legal one. All estates to which the party has an equitable, but not a legal, title, are trust estates : the person in whom the legal title rests holds it in trust for the benefit of him who has the equitable estate. The certificate of confirmation was, at least, evidence of equitable title in *Caller.* It entitled him to receive a patent without further purchase from the United States. So, whether this estate be legal or equitable, his widow was entitled to dower.

(*a*) *Laws Ala.* 247, *s.* 9.

The right of Mrs. *Caller* to dower did not depend entirely on the question whether the certificate of confirmation vested the legal title in her husband. The instructions which were requested to be given to the Jury on the trial of the issue were calculated to mislead. I am of opinion that they were properly refused.

Judge *Saffold.*—By the Statute of this State regulating dower, (*b*) the wife is entitled to one-third of all the lands, &c., of which her husband died seized and possessed, or had before conveyed ; and she had not relinquished her right of dower. Dower at common law is the third part of all the lands whereof, during the coverture, the husband was seized, of such estate as that the children of such wife might possibly inherit. I think that it may be questioned whether the Statute which I have referred to is in itself sufficient to entitle the widow to dower in the land held by the certificate of confirmation merely.

(*b*) *Laws Ala.* 259.

By the articles of Cession and Agreement between the United States and *Georgia,* only *grants* by the British and Spanish Governments legally and fully executed previous to the 27th of *October,* 1795, and claims derived from actual survey or settlement made under the Act of *Georgia,* commonly called the Bourbon Act, are provided for. This claim comes under neither description. It is derived from, and all the proceedings relative to it have been had under, the Act of Congress of 3d of *March,* 1803. This Act entitled a claimant under a Spanish warrant or order of survey,

on establishing the pre-requisites, to a confirmation in the same manner as if his title had been previously completed. If the claim under the British or Spanish Government had been matured into a grant, fully and legally executed, a certificate was to issue describing the tract of land and the grant, and confirming the title; and this being recorded as required, was to amount to a relinquishment forever on the part of the United States. No patent from the United States was necessary in confirmation of the title; but as to claimants under the Bourbon Act and the Act under which *Caller's* claim was derived, the Act of Congress requires that the commissioners shall give a certificate stating the circumstances of the case, and that the claimant is entitled to a patent; which certificate being duly entered with the register of the land office, &c., shall entitle the party to a patent, which shall issue in like manner as is provided for other lands of the United States. I am therefore of opinion, that by the Act of Congress a patent was clearly contemplated as the consummation of the legal title; and that the case of the claimant in this respect was not different from that of a purchaser or preemption claimant who had made full payment and obtained a final certificate.

But was a complete legal title in *Caller* necessary to sustain his widow's right to dower? The Statute of 1812, Laws Ala. 248, provides that all certificates duly issued " upon any warrant or order of survey, or to any donation or preemption claimants," shall be taken as vesting a full, complete, and legal title *so far as to enable the holder to maintain any action thereon.* By the Act of 1816, (Laws Ala. 338) where certificates have been obtained from the register of the land office, although the payment has not been completed, the land shall be subject to the dower of the widow in the same manner as if the title had been complete at the time of the death of the husband. The reason and equity which distinguish such cases from the present are not obvious. But the Statute of 1812 " to amend an Act respecting conveyances," (Laws Ala. 246, s. 9,) according to our construction puts this question at rest. The certificate which *Caller* held entitled him to a patent; his right was acknowledged to the exclusion of all other claims, (except *Lot's* as to a part of the land, and with that no other person has any concern;) he could not have had less than the strongest equitable title, and the United States must be viewed as holding the legal title in trust for his benefit. The Circuit Court, then, did not err in refusing to give the instructions prayed for.

It is the unanimous opinion of the Court that the judgment be affirmed.

The Chief Justice having presided on the trial below, did not sit.